**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nichole Meiss, | No. CV-24-08156-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial by the Social Security Administration of Plaintiff Nichole Meiss' second application for Title XVI Supplemental Security Income ("SSI") benefits under the Social Security Act. Meiss filed a complaint and an opening brief with the Court seeking judicial review of that denial. (Docs. 1, 19.) Defendant Commissioner of the Social Security Administration ("Commissioner") submitted a response brief (Doc. 21), and Meiss submitted a reply (Doc. 22). The Court has reviewed the briefs and the administrative record ("A.R.") (Docs. 13, 14) and now affirms the Administrative Law Judge's ("ALJ") decision.

## I.    BACKGROUND

### A.    Procedural History

As relevant here, Meiss applied for SSI benefits on September 27, 2021,[1] for a period of disability beginning on March 2, 2021.[2] (A.R. at 210.) Meiss' claim was initially

---

[1] The application shows a date of September 27, 2021; however, the ALJ's decision and the parties' briefs list September 14, 2021, as the application date. (A.R. at 210; Doc. 19 at 2; Doc. 21 at 1.) This discrepancy does not affect the Court's analysis.
[2] This is Meiss' second application for SSI benefits. Her first application was denied on

1 denied on May 31, 2022 (*id*. at 114), and upon reconsideration on February 17, 2023 (*id*.

2 at 122). Meiss thereafter filed a request for a hearing which was held telephonically before

3 the ALJ on November 30, 2023. (*Id*. at 34-56.) On January 22, 2024, the ALJ issued an

4 unfavorable decision, denying her claim. (*Id*. at 12-33.) Meiss subsequently filed a request

5 for review with the Appeals Council, which was denied on July 9, 2024. (*Id*. at 1-6.) Meiss

6 now seeks judicial review with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1-2.)

7 **B.    ALJ Determination**

8 The Court has reviewed the record and will discuss the pertinent evidence in

9 addressing the issues raised by the parties. After considering the medical evidence and

10 opinions, the ALJ evaluated Meiss' disability claim based on the following severe

11 impairments: (1) degenerative disc disease; (2) migraine headaches; (3) Gastroesophageal

12 reflux disease ("GERD"); (4) obesity; (5) depression; and (6) anxiety. (A.R. at 18.)

13 The ALJ found that Meiss "d[id] not have an impairment or combination of

14 impairments that meets or medically equals the severity of one of the listed impairments in

15 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id*. at 18.) Next, the ALJ determined Meiss'

16 residual functional capacity ("RFC").[3] The ALJ found:

17
18
19
20
21
22
23

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit 6 hours out of an 8-hour day; stand 6 hours out of 8-hour day; walk 6 hours out of an 8-hour day; occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; occasionally climb, stoop, kneel, crouch, and crawl; and have only occasional exposure to heights, moving machinery, temperature extremes, and vibrations. She can understand, remember and carry out simple job instructions only, with only occasional interaction with co-workers, the public, and supervisors. Occasional is defined as very little to 1/3 of the time. Frequent is defined as 1/3 to 2/3 of the time.

24 (*Id*. at 20.) Based on this RFC and the testimony of vocational expert Robin Scher, the ALJ

25
26 February 8, 2020. (A.R. at 17, 60-73.) Meiss was therefore presumed not disabled in her
   current application pursuant to Social Security Acquiescence Ruling 97-4(9), and the ALJ
27 found that she had not established changed circumstances indicating a greater disability to
   rebut that presumption. (*Id*. at 18.) The ALJ nonetheless evaluated the medical evidence
28 and denied her application on the merits. (*Id*.)
   [3] Residual functional capacity refers to the most a claimant can still do in a work setting
   despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

1  found that Meiss could perform jobs that existed in significant numbers in the national
2  economy. (*Id.* at 28, 51-55, 181.) Thus, the ALJ concluded that Meiss was not disabled
3  from the time of her application according to § 1614(a)(3)(A) of the Social Security Act.
4  (*Id.* at 29.)

5  ## II.    LEGAL STANDARD

6        The district court reviews only those issues raised by the party challenging the ALJ's
7  decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set
8  aside the ALJ's determination only if it is not supported by substantial evidence or if it is
9  based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence
10 is relevant evidence that a reasonable person might accept as adequate to support a
11 conclusion considering the entire record. *Id.* To determine whether substantial evidence
12 supports a decision, the Court must consider the entire record and may not affirm simply
13 by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally,
14 "[w]here the evidence is susceptible to more than one rational interpretation, one of which
15 supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*,
16 278 F.3d 947, 954 (9th Cir. 2002). The substantial evidence threshold "defers to the
17 presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108
18 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting
19 substantial evidence "is an extremely deferential standard").

20       To determine whether a claimant is disabled, the ALJ follows a five-step process.
21 *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four
22 steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d
23 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is
24 presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so,
25 the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not working in a
26 substantially gainful activity, then the claimant's case proceeds to step two. *Id.* At step two,
27 the ALJ determines whether the claimant has a "severe" medically determinable physical
28 or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and

the inquiry ends. *Id.* If the claimant's impairment is severe, then the inquiry proceeds to step three. *See id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then the ALJ assesses the claimant's RFC to determine whether the claimant is still capable of performing past relevant work before moving to step four. *Id.* § 416.920(a)(4)(iv), (e)-(f). At step four, the ALJ must determine whether the claimant retains the RFC to perform the requirements of past relevant work. *Id.* If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

The doctrine of *res judicata* may apply to administrative decisions, where a claimant has previously filed a disability claim. 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1). The Ninth Circuit has held that a presumption of continuing nondisability applies when a claimant is previously found not disabled. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). To rebut the presumption of nondisability, the claimant must show "changed circumstances" indicating a greater disability, such as an increase in the severity of an impairment or the existence of a new impairment. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (citation omitted). The initial ALJ's findings concerning the claimant's age, education, and ability to work may be entitled to preclusive effect if the claimant successfully rebuts the presumption. *Chavez*, 844 F.2d at 694.

## III.  DISCUSSION

Meiss raises two issues before the Court. First, Meiss argues that the ALJ failed to articulate clear and convincing reasons to discount her symptom testimony. (Doc. 19 at 2.) Next, Meiss argues the ALJ's finding that Meiss had not rebutted the presumption of nondisability imposed by the prior 2021 unfavorable decision is not supported by

1    substantial evidence. (*Id.*)

2        **A.**    **Meiss' Symptom Testimony**

3        Meiss argues that the ALJ committed materially harmful error in rejecting her

4 symptom testimony because the ALJ did not provide clear and convincing reasons based

5 on substantial evidence. (*Id.* at 6-11.) The Commissioner argues that the ALJ's findings

6 were properly evaluated and are supported by substantial evidence in the record. (Doc. 21

7 at 10.)

8        To evaluate a claimant's symptom testimony, an ALJ engages in a two-step

9 analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must

10 determine whether the claimant has shown sufficient "objective medical evidence of an

11 impairment that 'could reasonably be expected to produce the pain or symptoms alleged.'"

12 *Tristan v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02240-PHX-DWL, 2022 WL 1707953,

13 at *6 (D. Ariz. May 27, 2022) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

14 (9th Cir. 2007)). Then, the ALJ must evaluate the claimant's statements in the context of

15 the objective medical evidence and other evidence in the record, and "can reject the

16 claimant's testimony about the severity of [his or her] symptoms only by offering specific,

17 clear and convincing reasons for doing so." 20 C.F.R. § 416.929(c)(2)-(3); *Garrison*, 759

18 F.3d at 1014-15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). When

19 reviewing this objective medical testimony, "an ALJ may not reject a claimant's subjective

20 complaints based solely on a lack of medical evidence to fully corroborate the alleged

21 severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Despite the "clear

22 and convincing standard [being] the most demanding required in Social Security cases,"

23 *Garrison*, 759 F.3d at 1015 (citation modified), the ALJ need not "believe every allegation

24 of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other*

25 *grounds by*, 20 C.F.R. § 404.1502(a). If "the evidence is susceptible to more than one

26 rational interpretation," the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*,

27 533 F.3d 1035, 1038 (9th Cir. 2008) *superseded on other grounds by*, 20 C.F.R

28 § 404.1502(a).

When assessing the claimant's credibility, the ALJ may consider "inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains." *Thomas*, 278 F.3d at 958-59 (citation modified). Should the district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

On the first step, the ALJ determined that Meiss' impairments could reasonably be expected to cause her symptoms of "migraines, major depressive disorder with psychotic features, generalized anxiety disorder, chronic back pain, obesity, peptic ulcer, GERD, mixed hyperlipidemia, psychotic features, and sleeping impairment." [4] (A.R. at 21-22.) On the second step, however, the ALJ determined that Meiss' "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with" her medical record, self-reported daily activities, and conservative treatment regimen. (*Id*. at 22-25.)

### 1.    Consistency with Meiss' Medical Records

The ALJ concluded that Meiss' medical record is not entirely consistent with each of her reported symptoms and that "the objective evidence fails to establish that [Meiss] is unable to perform work activity." (*Id*. at 22-23.) Meiss argues that the ALJ's reasons for discounting her symptom testimony are not supported by substantial evidence. (Doc. 19 at 6.)

The ALJ assessed the medical record regarding Meiss' back pain, migraine headaches, gastrointestinal impairment, depression, and anxiety, noting several inconsistencies between Meiss' subjective testimony and the objective medical findings. For example, Meiss has a remote history of Ewing sarcoma of the spine, which was

---

[4] With respect to her back pain, the ALJ determined that the medical evidence indicates Meiss has a remote history of Ewing sarcoma of the spine. (A.R. at 22.) Meiss' treatment, chemotherapy, radiation, and back surgery took place when she was a teenager. (*Id*.)

removed in 2002. (A.R. at 22.) Meiss had a spinal cord stimulator ("SCS") implanted in August 2019[5] to remedy persistent back pain, but had it removed in July 2021 due to potential complications related to her Ewing sarcoma. (*Id.* at 21-22, 66, 71.) Meiss reported heightened back pain following the removal of the SCS. (*Id.* at 21-22.)

The ALJ then pointed to objective evidence in the medical record that was inconsistent with Meiss' symptom testimony regarding her back pain. The ALJ first noted that after the SCS was removed, Meiss' physical examination was "unremarkable, and [she] exhibited normal spine alignment and good ranges of motion in all joints," and had no neurological deficits. (Doc. 21 at 7; A.R. at 22.) The ALJ then noted that subsequent examinations in January and May of 2022 were equally "unremarkable" and showed that Meiss exhibited normal balance, gait, range of motion and back strength. (A.R. at 22, 323, 384-385, 393.) A June 2022 back examination showed "normal range of motion, normal alignment, no step-offs, and normal strength." (*Id.* at 22, 393.) Further, a February 2023 physical exam of the spine was "normal," and an October 2023 examination was also unremarkable. (*Id.* at 23, 26, 513-15, 554.) Thus, the ALJ determined that "the objective evidence fails to establish [Meiss] is unable to perform work activity due to back pain." (*Id.* at 23, 27.)

The ALJ repeated this process for each of Meiss' reported symptoms. (*Id.* at 23-25.) Having reviewed the record, the Court finds that substantial evidence supports the ALJ's finding that Meiss' symptom testimony was inconsistent with the objective medical record. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The Court concludes that the ALJ properly relied on the objective medical record as one clear and convincing reason to reject Meiss' symptom testimony. Ordinarily, a "lack of [corroborating] medical evidence" cannot be the sole basis for an adverse credibility finding. *Burch*, 400 F.3d at 681. But that is not the

---

[5] The ALJ's 2021 unfavorable decision notes that the SCS was implanted in 2018. (A.R. at 66.) However, the subsequent 2024 unfavorable decision and medical records show that the placement occurred in August 2019. (A.R. at 22.) This discrepancy does not affect the Court's analysis.

case here, as the ALJ also found Meiss' symptom testimony inconsistent with her conservative treatment history and daily activities, as discussed below.

### 2.    Consistency with Daily Living Activities

The ALJ also determined that Meiss' testimony about her daily living habits contradicted her claims about "the intensity, persistence, and limiting effects of her symptoms." (A.R. at 25.) Daily activities support an adverse credibility finding if the claimant can "spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting . . . ." *Fair*, 885 F.2d at 603. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). When an ALJ rationally interprets a claimant's daily activities—even if there is more than one rational interpretation—the decision will be upheld. *Burch*, 400 F.3d at 680.

Here, the ALJ determined that Meiss' self-reported daily living activities were not consistent with the severity of the symptoms she alleged. (A.R. at 25.) The ALJ considered Meiss' testimony and subjective reports that she maintained regular activities which included minor chores, light cooking, washing light dishes, grocery shopping with assistance, watching television, yoga, driving, and attending school. (*Id*. at 42-44.) Meiss testified that she was physically active five to six days per week and participated in school part-time. (*Id*. at 22, 25, 361, 562-563.) She attended a Judas Priest (an English heavy metal band) concert around November 2022. (*Id*. at 25.) The ALJ adequately considered the frequency with which Meiss can engage in these daily activities based on her back pain, migraine headaches, gastrointestinal impairments, obesity, depression, and anxiety. (*Id*. at 23-25.)

Meiss' daily activities serve as proper context in assessing her credibility, and the ALJ properly relied on them here in determining that her functionality was greater than indicated in her testimony. *See, e.g.*, *Burch*, 400 F.3d at 680 (upholding an ALJ's determination that a claimant's ability "to care for her personal needs, cook, clean and shop

'suggest[ed] that she [was] quite functional'" (citation omitted)). Substantial evidence supports the ALJ's conclusion that Meiss' daily activities contradicted her testimony about the severity of her limitations. And therefore, the ALJ properly offered specific, clear and convincing reasons to reject Meiss' symptom testimony.

### 3.    History of Medical Treatment

Finally, the ALJ discounted Meiss' testimony after determining that her treatment was "routine and conservative in nature." (A.R. at 22-23.) The ALJ noted Meiss had a history of "modest treatment," and the medication she received to aid in managing her back pain, migraine, and gastrointestinal impairments helped manage her symptoms. (*Id.* at 22-24.) Meiss argues that the ALJ's conclusion is not supported by substantial evidence. (Doc. 19 at 8.)

Evidence of conservative medical treatment may be a sufficient basis for discounting a claimant's testimony about the severity of his or her symptoms. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The extent of a claimant's treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3).

Here, the ALJ considered the nature of Meiss' treatment when evaluating her symptom testimony, deeming it "conservative" in nature. (A.R. at 22-23.) Meiss contends that the treatment for her Ewing's sarcoma and the removal of the spinal cord stimulator were "hardly 'conservative.'" (Doc. 19 at 8.) The Commissioner attempts to rebut this point by noting that the spinal cord stimulator was removed in July 2021—prior to Meiss submitting her second SSI benefits application. (Doc. 21 at 8.) But this rebuttal is unconvincing because the unadjudicated period of disability currently before the Court begins on March 2, 2021. (A.R. at 210.) The removal of the spinal cord stimulator therefore occurred during Meiss's claimed period of disability and is relevant to the history of medical treatment. *See Newton v. Saul*, No. 2:18-CV-00971-GMN-EJY, 2020 WL 1327407, at *22 n.19 (D. Nev. Feb. 26, 2020) (noting the relevant adjudicatory period begins on the onset date of the disability); *cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

1   F.3d 1155, 1165 (9th Cir. 2008) (noting medical evidence predating the onset of disability

2   is of limited relevance).

3        The ALJ, however, disregarded the removal of Meiss's spinal cord stimulator,

4   seemingly because it was removed after the application was filed. (A.R. at 22 ("In July

5   2021, the spinal cord stimulator paddle and generator were removed, with no documented

6   complications. . . . As of September 14, 2021, the date the application was filed, the

7   claimant's treatment for back pain was simply routine and conservative." (citation

8   omitted)).) As explained above, that is erroneous. *See Newton*, 2020 WL 1327407, at *22

9   n.19; *Carmickle*, 533 F.3d at 1165.

10       But "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*

11  *v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). A harmless error exists "when it is clear

12  from the record that the ALJ's error was inconsequential to the ultimate nondisability

13  determination." *Id.* (citation modified). Here, the ALJ provided two clear and convincing

14  reasons, supported by substantial evidence, which discount Meiss's testimony:

15  inconsistency with objective medical evidence and inconsistency with Meiss' daily living

16  activities. Even if an ALJ offers erroneous reasons for discrediting a claimant's testimony,

17  so long as she offers other specific, clear and convincing reasons for discounting the

18  testimony, the error is harmless. *Jennings v. Saul*, 804 F. App'x 458, 463 (9th Cir. 2020).

19  Since the ALJ supported her non-credibility determination with other specific, clear, and

20  convincing reasons, the error is harmless.

21       **B.    The ALJ's Application of the *Chavez* Presumption**

22       Meiss contends that the ALJ erred in applying the *Chavez* presumption of

23  continuing nondisability because she demonstrated changed circumstances indicating

24  greater disability after the 2021 unfavorable decision, and the error was not harmless. (Doc.

25  19 at 11-13; Doc. 22 at 3.)

26       A disability benefits application that is filed regarding the same issues considered

27  in a previous unfavorable disability decision that was not appealed may be subject to

28  preclusion under *res judicata*. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009);

*Chavez*, 844 F.2d at 693; *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). This principle holds true for administrative decisions but is less rigidly applied in such cases as compared to judicial proceedings. *Chavez*, 844 F.2d at 693; *Gregory*, 844 F.2d at 666. An ALJ's binding determination of nondisability creates a presumption of continuing nondisability. *See Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985); *see also* SSAR 97-4(9), 1997 WL 742758, at *3 Dec. 3, 1997). Accordingly, Meiss can only obtain benefits for a disabling condition that manifested itself after March 2, 2021. *See Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1064-65 (9th Cir. 1985) (noting that the critical date is the date of onset of disability). Moreover, the ALJ's finding that Meiss could work beginning March 2, 2021, created a presumption that Meiss continued to be able to work after that date. *See Lyle v. Sec'y of Health & Human Servs.,* 700 F.2d 566, 568-69 (9th Cir.1983).

A claimant can rebut this presumption if she demonstrates there are "changed circumstances" indicating a greater disability. *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985) (citation omitted); *Meadville v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08300-PCT-MTL, 2022 WL 620946, at *3 (D. Ariz. Mar. 3, 2022) (citation omitted). Even if a claimant rebuts the presumption, the previous ALJ's findings regarding a claimant's RFC, education, and work experience "are entitled to some *res judicata* consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694 (emphasis added).

In her initial disability claim, which was ultimately decided in the March 2021 unfavorable decision, Meiss was found to have the following severe impairments: lumbar and thoracic degenerative disc disease and spondylosis with sciatica and neurostimulator implant in 2019; migraine headaches; obesity; history of Ewing's sarcoma; major depressive disorder and generalized anxiety disorder with panic attacks. (Doc. 21 at 4; A.R. at 63.) The ALJ determined that Meiss was not disabled and could perform certain jobs that existed in significant numbers in the national economy. (Doc. 21 at 4; A.R. at 72-73.) Meiss did not appeal the decision. (A.R. at 18.)

In the subsequent January 22, 2024 decision challenged here, the ALJ found that

Meiss has the following severe impairments: degenerative disc disease, migraine headaches, GERD, obesity, depression, and anxiety. (*Id.*; Doc. 21 at 4..) The ALJ determined that Meiss failed to demonstrate "substantial" changed circumstances, and therefore, did not overcome the presumption of continuing nondisability that arose from the previous nondisability determination. (A.R. at 26.) Nevertheless, the ALJ conducted a full analysis of Meiss' disability claim for the unadjudicated period and found that Meiss did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she could perform certain jobs that existed in significant numbers in the national economy. (*Id*. at 17-20, 28-29).

Here, Meiss argues that the ALJ's presumption of nondisability was improper because she showed changed circumstances as evidenced by (1) the spinal cord stimulator she had removed during the relevant period, (2) an MRI showing exaggerated kyphosis, and (3) a medical opinion suggesting Meiss could perform light work with no more than two hours of standing. (Doc. 19 at 3-5, 11-13; Doc. 21 at 4; A.R. at 67, 314, 386-87, 546.) The Commissioner acknowledges that Meiss can prove changed circumstances but denies that there is evidence to confirm that the changed circumstances indicate "*greater* disability." (Doc. 19 at 3-6 (emphasis added).)

As noted by the ALJ, following the removal of the spinal cord stimulator, Meiss received "unremarkable" physical examination results and alleged pain but "no new neurological symptoms." (A.R. at 320, 476, 544.) The ALJ also found that Meiss failed to link MRI results received during the unadjudicated period to worsened function. (*Id.* at 22, 546-47.) Finally, the ALJ considered two opinions by Dr. Jeri B. Hassman. (*Id*. at 26, 383-88, 513-19.) Following the first examination, which took place on May 7, 2022, Dr. Hassman opined that Meiss could perform a range of light work with no more than four hours of standing or walking per day. (*Id*. at 386-87.) The examination was otherwise unremarkable. (*Id*.) On February 7, 2023, Dr. Hassman completed a second examination and determined that Meiss had no physical limitations. (*Id*. at 513-19.) The ALJ noted that

the medical examinations did not support a finding that Meiss established "greater disability." (Doc. 21 at 5-6, A.R. at 26-27.) The ALJ concluded that Meiss had not proved "changed circumstances indicating a greater disability to rebut the presumption of continuing nondisability pursuant to AR 97-4(9)." (A.R. at 27.)

The ALJ stated that Meiss was unable overcome the presumption of continuing nondisability by "a showing of changed circumstance resulting in a greater degree of functional limitation." (*Id.* at 18.) Given the above, the Court finds that the ALJ's application of the presumption of continuing nondisability was supported by substantial evidence and therefore proper.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the January 22, 2024 decision by the Administrative Law Judge (A.R. at 12-29).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 9th day of September, 2025.


Michael T. Liburdi
United States District Judge